Henry P. Gonzalez, LL.M. (HPG 9238)
RODRIGUEZ O'DONNELL
GONZALEZ & WILLIAMS, P.C.
Attorneys for DHL Global Forwarding SA (PTY) LTD
1211 Connecticut Avenue, N.W., Suite 800
Washington, D.C. 20036
(202) 973-2980   Telephone
(202) 293-3307   Facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

| | | |
|---|---|---|
| PHOENIX SHIPPING CORPORATION, | : | ECF Case |
| | : | |
| Plaintiff, | : | No.: 08 Civ. 6325 |
| | : | |
| v. | : | DECLARATION OF ROBERT |
| | : | COVENTRY IN SUPPORT OF |
| DHL GLOBAL FORWARDING, | : | DEFENDANT'S MOTION TO VACATE |
| (PTY) LTD, a/k/a DHL INDUSTRIAL | : | EX PARTE ATTACHMENT ORDER |
| PROJECTS DIVISION, | : | |
| JOHANNESBURG | : | |
| Defendant. | : | |

-------------------------------------------------------X

I, Robert Coventry, state the following, based upon my personal knowledge, information, and belief:

1.   I am the Project Manager, DHL Industrial Projects South Africa of defendant DHL Global Forwarding, SA (PTY) LTD, a/k/a DHL Industrial Projects Division, Johannesburg ("DHL GF"), which position I have held since December 2006.

2.   I make this declaration based upon my own personal knowledge and direct involvement in the alleged shipping transaction subject of this case.

3.   On or about July 15, 2008, Plaintiff Phoenix Shipping Corporation ("Phoenix") applied for an attachment of DHL GF's funds pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") of the Federal Rules of Civil Procedure.

4. On or about July 17, 2008, the Court issued an Ex Parte Order for Process of Maritime Attachment against DHL GF based upon a verified complaint.

5. Subsequently, a substantial amount of DHL GF's funds passing through banks in New York were attached pursuant to the Ex Parte Order.

6. The underlying dispute is based upon an alleged Conline Booking Note that DHL GF maintains was never signed by any party, contains incorrect information, does not contain plaintiff's name, and was merely a draft of a Booking Note sent to DHL's customer where DHL was acting as agent for a disclosed principal.

7. On March 20th, 2008, I was copied in on an e-mail from Mr. Stevie Davies of Bateman Engineering, who directly contacted Mr. Barry Windrim of Windward Shipping (PTY) Ltd. ("Windward Shipping"), the agent for Phoenix Shipping Corporation. In this e-mail, Mr. Davies gives the go ahead for Mr. Windrim to book 1607 of cube of cargo. See Attachment A, which consists of a true and correct copy of the March 20th, 2008 e-mail from Mr. Davies to Mr. Windrim.

8. On March 20th, 2008, I e-mailed Mr. Windrim of Windward Shipping and requested that he confirm the booking via me and I also requested the booking number. See Attachment A, which consists of a true and correct copy of my March 20th, 2008 e-mail from me to Mr. Windrim.

9. The e-mails contained in Attachment 1 show that DHL GF was always acting as an agent for Bateman and that it was Bateman that directly provided the go ahead for Windward Shipping to book 1607 cubes of cargo for the Blue Ridge Project.

10. Between March 21st, 2008 and March, 26, 2008, DHL GF acted as an agent for Bateman and during which time I communicated messages between Bateman and Mr. Barry

2

Windrim of Windward Shipping, acting as an agent for Phoenix Shipping. These communications consisted of DHL GF seeking information for Mr. Steve Davies of Bateman through Mr. Windrim of Windward Shipping regarding the booking confirmation sheet, expenses for lifts, risk, and expenses, carrier's stowage plan, whether Bateman's cargo would be loaded below deck, and when the Bateman can expect the Conline Booking Note. See Attachment B, which consists of e-mails between myself, Mr. Windrum and Mr. Stevie Davies regarding his negotiations on behalf of Phoenix and seeking confirmation through me, that all is in order with the booking.

11.    On March 21st, 2008, I received an e-mail from Barry Windrim advising that Stevie Davies had changed the total cargo size below the minimum set by Phoenix Shipping. See Attachment B.

12.    On March 26, 2008, at 4:45 p.m., I received an e-mail to me from Mr. Windrim of Windward Shipping, containing the "Booking Note," and "Additional Clauses. I then forwarded the booking note and the additional clauses to Mr. Steve Davies of Bateman and requested his signature and to return it to me. See Attachment E which consists of an e-mail from me regarding the Booking Note.

13.    On March 26, 2008 at 11: 07 a.m., I e-mailed Mr. Davies acting for Batemen, and advised, among other things, that the booking note was being prepared. See Attachment C.

14.    On March 26th 2008, at 8:39 p.m., I received an e-mail from Stevie Davies advising that Bateman no longer wished to book the shipment through DHL due to slow response by DHL South Africa and not having the booking reference number, among other reasons. See Attachment D, which consists of an e-mail from Mr. Steve Davies to me regarding his desire to cancel the booking.

15.    On March 27, 2008, Mr. Barry Windrim of Windward Shipping addressed an e-mail to Steve Davies of Bateman (with a copy to DHL Global Forwarding SA) noting that "as per instructions received from your goodselves, a FULLY FIRM booking was made on your behalf." See Attachment F.

16.    That same morning, March 27, 2008, Mr. Barry Windrim of Windward Shipping addressed another e-mail to Steve Davies of Bateman (with a copy to DHL Global Forwarding SA), stating that Phoenix was not happy, that Phoenix intended to protect their claim and inquired as to why Bateman was considering another vessel service.  See Attachment G.

17.    Based on the above direct exchanges between Mr. Windrim of Windward Shipping and Mr. Steve Davies of Bateman, it is clear that DHL GF was acting as an agent on behalf of Batemen.

18.    I also refer the Court to the fact that the Conline Booking Note and Additional clauses were never signed by Bateman, DHL GF or Phoenix.  See Attachment E.

19.    In addition, the Court should note that the CONLINE BOOKING NOTE was a mere draft, which contained serious errors, for example, the "Carrier" is listed as DHL GF, when in fact, it should have been "Phoenix."  See Attachment E.

20.    I have read the Verified Complaint filed on behalf of Phoenix and observe that it correctly identifies DHL GF as acting as an agent for Bateman.  However, it is incorrect for the Complaint to allege that "Phoenix" was shown as the "Carrier" in the CONLINE BOOKING NOTE 2000."  See Attachment E, which is a true and correct copy of the CONLINE BOOKING NOTE as received by Mr. Windrim on March 26, 2008.

21.    There has been no agreement to arbitrate.  We have denied, through DHL GF's Solicitors Durban, South Africa, that there was a contract with DHL GF, and that there was an

agreement to arbitrate.    At this point in time, no arbitration proceedings have actually commenced, whether in South Africa or London or elsewhere.  In point of fact, save for the attachment proceedings in the Southern District of New York, no legal proceedings have been instituted whatsoever.  Therefore, the reference in the Verified Complaint that, "arbitration has been commenced" is false."

I, Robert Coventry, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that any documents or communications attached hereto are true and correct copies, either received or sent by me.

Mr. Robert Coventry

Executed:  August 15, 2008

# ATTACHMENT A

## Robert Coventry (DHL ZA)

| | |
|---|---|
| **From:** | Robert Coventry (DHL ZA) |
| **Sent:** | Thursday, March 20, 2008 3:30 PM |
| **To:** | 'Barry Windrim' |
| **Subject:** | FW: Blue Ridge Cargo Booking. |
| **Attachments:** | Steve Davies.vcf |

barry/rob

please confirm the booking via me and let me have the booking reference no.

thanks/rob

---

**From:** Steve Davies [mailto:Steve.Davies@batemanengineering.com]
**Sent:** Thursday, March 20, 2008 2:15 PM
**To:** bwindrim@iafrica.com; Robert Coventry (DHL ZA)
**Subject:** Blue Ridge Cargo Booking.

Dear Barry / Rob,

We would like to give you the go ahead to book 1607 cubes of cargo for the Blue Ridge project.

We will cancel the booking with Spedag on the basis that we do not accept the change in laycan dates.

Please urgently give us a confirmed booking number.

Barry,

Thank you very much for going through the Spedag contract and raising points of concern,
i would very much like this in writing at some point in order for me to have a better understand of terminology
and avoid any future contractual misunderstandings.

Please advise what it is that you require fro me on this side.

Yours Sincerely

Stevie Davies
**Bateman Projects Limited**
Transport & Logistics Manager
Bartlett Rd, Boksburg, P.O.Box 25937
East Rand 1462

011 899 9111  Tel.
011 899 2216  Direct.
011 899 4901  Fax.
072 796 9338  Mobile.
073 207 1473  Mobile.
steve.davies@batemanengineering.com
www.batemanengineering.com

NOTE: This e-mail message and all attachments thereto are subject to the Bateman Group disclaimer and terms and
conditions: see http://www.batemanengineering.com. This notice is deemed to form part of this communication in terms
of Section 11 of the Electronic Communications and Transactions Act 25 of 2002 of South Africa"

4/17/2008

Yours Sincerely

Stevie Davies
**Bateman Projects Limited**
Transport & Logistics Manager
Bartlett Rd, Boksburg, P.O.Box 25937
East Rand 1462

011 899 9111   Tel.
011 899 2216   Direct.
011 899 4901   Fax.
072 796 9338   Mobile.
073 207 1473   Mobile.
steve.davies@batemanengineering.com
www.batemanengineering.com

NOTE: This e-mail message and all attachments thereto are subject to the Bateman Group disclaimer and terms and conditions: see http://www.batemanengineering..com. This notice is deemed to form part of this communication in terms of Section 11 of the Electronic Communications and Transactions Act 25 of 2002 of South Africa"

_____ NOD32 2966 (20080321) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

# ATTACHMENT B

**Sent:** Friday, March 21, 2008 9:25 AM
**To:** Robert Coventry (DHL ZA)
**Subject:** Re: Blue Ridge Cargo Booking.

rob/barry

good morning.

FYG the entire time i have been negotiating this booking on your behalf - first with COSCO and now with Phoenix Shipping - i have been working on a ttl cargo size of 1,703cbm,which is as per packing lists (900cbm + 803cbm).

as per Steve's msg below he is now talking abt a ttl cgo size of 1,607cbm,but the agreement with Phoenix Shipping is for a minimum of 1,700cbm @ usd 160 w/m FLT hook/hook.

plse confirm by return that this is clearly understood by Bateman's,and that all still in good order with the booking?

many tks.

brgds
barry windrim
windward shipping dbn
as broker only

  —— Original Message ——
  **From:** Robert Coventry (DHL ZA)
  **To:** Barry Windrim
  **Sent:** Thursday, March 20, 2008 3:29 PM
  **Subject:** FW: Blue Ridge Cargo Booking.

  barry/rob

  please confirm the booking via me and let me have the booking reference no.

  thanks/rob

  _____

  **From:** Steve Davies [mailto:Steve.Davies@batemanengineering.com]
  **Sent:** Thursday, March 20, 2008 2:15 PM
  **To:** bwindrim@iafrica.com; Robert Coventry (DHL ZA)
  **Subject:** Blue Ridge Cargo Booking.

  Dear Barry / Rob,

  We would like to give you the go ahead to book 1607 cubes of cargo for the Blue Ridge project.

  We will cancel the booking with Spedag on the basis that we do not accept the change in laycan dates.

  Please urgently give us a confirmed booking number.

  Barry,

  Thank you very much for going through the Spedag contract and raising points of concern, i would very much like this in writing at some point in order for me to have a better understand of terminology
  and avoid any future contractual misunderstandings.

  Please advise what it is that you require fro me on this side.

2008/05/28

# ATTACHMENT C

## Robert Coventry (DHL ZA)

From: Robert Coventry (DHL ZA)
Sent: Wednesday, March 26, 2008 11:07 AM
To:     'Steve Davies'

Steve,

1. Ship has gear to 30m/t. Any lifts over are for vessel's account, risk and expense.

2. Conline booking note is being prepared. You will have by close of business today. ( Barry out of the office, only
   back at 1330 hrs.

3. Checking with carrier the stowage plan and will revert. Delicate equipment WILL be under deck.

Kind Regards
Rob Coventry
Project Manager
**DHL Industrial Projects South Africa**

**DHL Global Forwarding SA (Pty) Ltd**
PO Box 558, Kempton Park 1620
10 Patrick Road
Jet Park
Boksburg 1459
South Africa
Web: www.dhl.com

Email: robert.coventry@dhl.com
Tel: +27 11 928 0400 (Switchboard)
Tel: +27 11 928 0575 (Direct)
Fax: +27 11 928 0587
Mobile: +27 82 326 7824
**Standard time zone: UTC/GMT + 2 hours**

4/17/2008

# ATTACHMENT D

**To:** 'Stevie D'
**Subject:** RE: Cancelation

Steve,

You have the booking note for signature. The vessel will be outside Shanghai waiting for berthing at 0600 hrs on the 29th.

Regards

Rob.

---

**From:** Stevie D [mailto:123ste@gmail.com]
**Sent:** Wednesday, March 26, 2008 8:39 PM
**To:** Robert Coventry (DHL ZA)
**Subject:** Cancelation

Dear Rob,

I am sorry to advise you that we no longer have confidence in DHL to provide us with the service we require for our Shanghai cargo.
The wait for our booking reference number is taking on the familiar look of the previous Cosco vessel drama / failure.

We had an agreement that the booking number would be received by 10h00 this morning, yet when i left the office this afternoon nothing had been received.

To add further concern we checked with the Shanghai port authority and no application has been made for this vessel to enter Shanghai port; despite the fact that this is normally done 5 days prior to arrival.

Another factor that annoyed me to distraction was the DHL China office's total lack of protocol; inspite of all the emails to yourself and DHL China; they called CITEC and advised them that the sailing will be on the 7th April without any notification to ourselves.

If this date is correct then why were we not given this information in a transparent manner?

If this is incorrect why are our suppliers being confused (once again) by the DHL China office?

It would appear that they dont have our interests at heart; or do not know what they are doing.

It would also appear that DHL South Africa is over stretched and is not being proactive on this project.

Please cancel the cargo booking; we have no choice but to move this back to Spedag.

Yours Sincerely

Stevie Davies
**Bateman Projects Limited**
Transport & Logistics Manager
Bartlett Rd, Boksburg, P.O.Box 25937
East Rand 1462

011 899 9111  Tel.
011 899 2216  Direct.
011 899 4901  Fax.
072 796 9338  Mobile.
073 207 1473  Mobile.
steve.davies@batemanengineering.com

4/3/2008

# ATTACHMENT E

**Robert Coventry (DHL ZA)**

| | |
|---|---|
| From: | Robert Coventry (DHL ZA) |
| Sent: | Wednesday, March 26, 2008 4:45 PM |
| To: | 'Steve Davies' |
| Subject: | FW: MV'COS PROSPERITY' - BALL MILLS CHINA/SA CONLINE B/N 2000 (1) |

Attachments:    CONLINEBOOKING 2000.PDF; ADDITIONAL CLAUSES CONLINE BOOKING - MV'COS
                PROSPERITY.doc; bateman.pdf

    

CONLINEBOOKING    ADDITIONAL    bateman.pdf (274
2000.PDF (53 KB...LUSES CONLINE BOI    KB)

                                                    Steve,

Attached is the booking note. Please sign and return to : sandy.naidoo@dhl.com;

Thank you.

Regards

Rob.

-----Original Message-----
From: Barry Windrim [mailto:bwindrim@iafrica.com]
Sent: Wednesday, March 26, 2008 4:38 PM
To: Robert Coventry (DHL ZA)
Subject: RE: MV'COS PROSPERITY' - BALL MILLS CHINA/SA CONLINE B/N 2000 (1)

rob/barry

as requested.
many tks,and owisc trust all in order.

brgds
barry windrim
windward shipping dbn
as broker only

1

Page 1

| Agents (full style and address)<br>Windward Shippping (Pty) Ltd<br>Suite 750,7th Floor<br>Mansion House<br>12,Field Street<br>Durban<br>South Africa | BIMCO LINER BOOKING NOTE<br>CODE NAME: "CONLINEBOOKING 2000" | |
|---|---|---|
| | Place and date<br>Durban,South Africa - 20th March 2008 | |
| | Vessel<br>Mv'Cos Prosperity' - see Clause 21 | |
| Carrier (full style and address)<br>DHL Industrial Projects South Africa (A Division of)<br>DHL Global Forwarding SA (Pty) Ltd<br>10,Patrick Road<br>Jet Park, Boksburg<br>Johannesburg<br>South Africa | Time for shipment (about)<br>Laycan 28 March - 5 April 2008 | |
| | Port of loading**<br>Shanghai,China (Carrier's Berth) | |
| | Port of discharge<br>Durban,South Africa (Carrier's Berth) | |
| Merchant* (full style and address)<br>Bateman Projects Limited<br>Barlett Road<br>Boksburg, Johannesburg<br>South Africa | Merchant's representatives at loading port (full style and address) | |

| Container No./Seal No./Marks and Numbers<br>(if available) | Number and kind of packages, description of cargo | Gross weight, kg<br>(if available) | Measurement, m³<br>(if available) |
|---|---|---|---|
| | A PART CARGO TOTALING ABOUT 691MT/1,703CBM/<br>1,711FTONS OF BALL MILL SHELLS AND ACCESSORIES<br>DETAILS AS PER ATTACHED P/LISTS MAX PW 42MT<br><br>CARGO IS PARTLY STACKABLE/OVER STOWABLE,WITH<br>CERTAIN LOOSE/UNPROTECTED ITEMS,BUT IS OTHER-<br>WISE SUITABLY PACKAGED AND PREPARED FOR<br>OCEAN TRANSPORTATION | | |

| Freight details and charges<br>Basis a minimum of 1,700ftons US$ 165 w/m all-in Full Liner<br>Terms hook/hook | Special terms, if agreed<br>Additional Clauses 19 to 38 are deemed to be incorporated in<br>this Booking Note. |
|---|---|
| Freight (state prepayable or payable at destination)<br>See Clause 19 | |

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof which shall prevail over any previous arrangements and which shall in turn be superseded (except as to deadfreight) by the terms of the Bill of Lading.

| Signature (Merchant) | Signature (Carrier) |
|---|---|
| | |

*As defined hereinafter (Cl. 1)

**(or so near thereunto as the Vessel may safely get and lie always afloat)

Printed by BIMCO's idea

Copyright, published by
The Baltic and International Maritime Council
(BIMCO), Copenhagen, 2000

This document is a computer generated CONLINEBOOKING 2000 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## FULL TERMS OF THE CARRIER'S BILL OF LADING FORM*

**1. Definition.**
"Merchant" includes the shipper, the receiver, the consignor, the consignee, the holder of the Bill of Lading, the owner of the cargo and any person entitled to possession of the cargo.

**2. Notification.**
Any mention in this Bill of Lading of parties to be notified of the arrival of the cargo is solely for the information of the Carrier and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.

**3. Liability for Carriage Between Port of Loading and Port of Discharge.**
(a) The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ('the Hague Rules') as amended by the Protocol signed at Brussels on 23 February 1968 ('the Hague-Visby Rules') and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract save where the Hague Rules as enacted in the country of shipment or, if no such enactment is in place, the Hague Rules as enacted in the country of destination apply compulsorily to this Contract.
The Protocol signed at Brussels on 21 December 1979 ('the SDR Protocol 1979') shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or with respect to deck cargo and live animals.
(b) If the Carrier is held liable in respect of delay, consequential loss or damage other than loss of or damage to the cargo, the liability of the Carrier shall be limited to the freight for the carriage covered by this Bill of Lading, or to the limitation amount as determined in sub-clause 3(a), whichever is the lesser.
(c) The aggregate liability of the Carrier and/or any of its servants, agents or independent contractors under this Contract shall, in no circumstances, exceed the limits of liability for the total loss of the cargo under sub-clause 3(a) or, if applicable, the Additional Clause.

**4. Law and Jurisdiction.**
Disputes arising out of or in connection with this Bill of Lading shall be exclusively determined by the courts and in accordance with the law of the place where the Carrier has his principal place of business, as stated on Page 1, except as provided elsewhere herein.

**5. The Scope of Carriage.**
The intended carriage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the carriage including bunkering, loading, discharging, or other cargo operations and maintenance of Vessel and crew.

**6. Substitution of Vessel.**
The Carrier shall be at liberty to carry the cargo or part thereof to the Port of discharge by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port.

**7. Transhipment.**
The Carrier shall be at liberty to tranship, lighter, land and store the cargo either on shore or afloat and reship and forward the same to the Port of discharge.

**8. Liability for Pre- and On-Carriage.**
When the Carrier arranges pre-carriage of the cargo from a place other than the Vessel's Port of loading or on-carriage of the cargo to a place other than the Vessel's Port of discharge, the Carrier shall contract as the Merchant's Agent only and the Carrier shall not be liable for any loss or damage arising during any part of the carriage other than between the Port of loading and the Port of discharge even though the freight for the whole carriage has been collected by him.

**9. Loading and Discharging.**
(a) Loading and discharging of the cargo shall be arranged by the Carrier or his Agent.
(b) The Merchant shall, at his risk and expense, handle and/or store the cargo before loading and after discharging.
(c) Loading and discharging may commence without prior notice.
(d) The Merchant or his Agent shall tender the cargo when the Vessel is ready to load and as fast as the Vessel can receive including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to tender the cargo when the Vessel is ready to load or fails to load as fast as the Vessel can receive the cargo, the Carrier shall be relieved of any obligation to load such cargo, the Vessel shall be entitled to leave the port without further notice and the Merchant shall be liable to the Carrier for deadfreight and/or any overtime charges, losses, costs and expenses incurred by the Carrier.
(e) The Merchant or his Agent shall take delivery of the cargo as fast as the Vessel can discharge including, if required by the Carrier, outside ordinary working hours notwithstanding any custom of the port. If the Merchant or his Agent fails to take delivery of the cargo the Carrier's discharging of the cargo shall be deemed fulfilment of the contract of carriage. Should the cargo not be applied for within a reasonable time, the Carrier may sell the same privately or by auction. If the Merchant or his Agent fails to take delivery of the cargo as fast as the Vessel can discharge, the Merchant shall be liable to the Carrier for any overtime charges, losses, costs and expenses incurred by the Carrier.
(f) The Merchant shall accept his reasonable proportion of unidentified loose cargo.

**10. Freight, Charges, Costs, Expenses, Duties, Taxes and Fines.**
(a) Freight, whether paid or not, shall be considered as fully earned upon loading and non-returnable in any event. Unless otherwise specified, freight and/or charges under this Contract are payable by the Merchant to the Carrier on demand. Interest at Libor (or its successor) plus 2 per cent. shall run from the date when freight and charges are payable.
(b) The Merchant shall be liable for all expenses of fumigation, gathering and sorting loose cargo and weighing onboard, repairing damage to and replacing packing due to excepted causes, and any extra handling of the cargo for any of the aforementioned reasons.
(c) The Merchant shall be liable for any dues, duties, taxes and charges which under any denomination may be levied, inter alia, on the basis of freight, weight of cargo or tonnage of the Vessel.
(d) The Merchant shall be liable for all fines, penalties, costs, expenses and losses which the Carrier, Vessel or cargo may incur through non-observance of Customs House and/or import or export regulations.
(e) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the cargo to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier in case of doubt has the right to obtain from the Merchant the original invoice and to have the cargo inspected and its contents, weight, measurement or value verified.

**11. Lien.**
The Carrier shall have a lien on all cargo for any amount due under this contract and the costs of recovering the same and shall be entitled to sell the cargo privately or by auction to satisfy any such claims.

**12. General Average and Salvage.**
General Average shall be adjusted, stated and settled in London according to the York-Antwerp Rules 1994, or any modification thereof, in respect of all cargo, whether carried on or under deck. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**13. Both-to-Blame Collision Clause.**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the said cargo paid or payable by the other or non-carrying vessel or her Owner to the owner of the cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

**14. Government directions, War, Epidemics, Ice, Strikes, etc.**
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the carriage under this Contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the Vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the carriage would expose the Vessel or any cargo onboard to risk of seizure, damage or delay, in consequence of war, warlike operations, blockade, riots, civil commotions or piracy, or any person onboard to risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(c) Should it appear that epidemics; quarantine; ice; labour troubles, labour obstructions, strikes, lockouts (whether onboard or on shore); difficulties in loading or discharging would prevent the Vessel from leaving the Port of loading or reaching or entering the Port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without unreasonable delay, the Master may discharge the cargo at the Port of loading or any other safe and convenient port.
(d) The discharge, under the provisions of this Clause, of any cargo shall be deemed due fulfilment of the contract of carriage.
(e) If in connection with the exercise of any liberty under this Clause any extra expenses are incurred they shall be paid by the Merchant in addition

to the freight, together with return freight, if any, and a reasonable compensation for any extra services rendered to the cargo.

**15. Defences and Limits of Liability for the Carrier, Servants and Agents.**
(a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contract of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment.
(b) Without prejudice to the generality of the foregoing provisions in this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.
(c) The Merchant undertakes that no claim shall be made against any servant or agent of the Carrier and, if any claim should nevertheless be made, to indemnify the Carrier against all consequences thereof.
(d) For the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who might be his servants or agents from time to time and all such persons shall to this extent be or be deemed to be parties to this Contract of carriage.

**16. Stowage.**
(a) The Carrier shall have the right to stow cargo by means of containers, trailers, transportable tanks, flats, pallets, or similar articles of transport used to consolidate goods.
(b) The Carrier shall have the right to carry containers, trailers, transportable tanks and covered flats, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, on or under deck without notice to the Merchant.

**17. Shipper-Packed Containers, Trailers, Transportable Tanks, flats and pallets.**
(a) If a container has not been filled, packed or stowed by the Carrier, the Carrier shall not be liable for any loss of or damage to its contents and the Merchant shall cover any loss or expense incurred by the Carrier, if such loss, damage or expense has been caused by:
(i) negligent filling, packing or stowing of the container;
(ii) the contents being unsuitable for carriage in container; or
(iii) the unsuitability or defective condition of the container unless the container has been supplied by the Carrier and the unsuitability or defective condition would not have been apparent upon reasonable inspection at or prior to the time when the container was filled, packed or stowed.
(b) The provisions of sub-clause (i) of this Clause also apply with respect to trailers, transportable tanks, flats and pallets which have not been filled, packed or stowed by the Carrier.
(c) The Carrier does not accept liability for damage due to the unsuitability or defective condition of reefer equipment or trailers supplied by the Merchant.

**18. Return of Containers.**
(a) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's tariff or elsewhere.
(b) The Merchant shall be liable to the Carrier for any loss, damage to, or delay, including demurrage and detention incurred by or sustained to containers, pallets or similar articles of transport during the period between handing over to the Merchant and return to the Carrier.

**ADDITIONAL CLAUSE**
U.S. Trade. Period of Responsibility.
(i) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.
(ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

*BIMCO LINER BILL OF LADING
Code Name: "Conlinebooking 2000"
Amended January 1950; August 1952; January 1973; July 1974; August 1976; January 1978; November 2000

This document is a computer generated CONLINEBOOKING 2000 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## ADDITIONAL CLAUSES TO DHL INDUSTRIAL PROJECTS/BATEMAN PROJECTS LIMITED CONLINE BOOKING NOTE 2000 DATED 20th MARCH 2008 /  MV'COS PROSPERITY'

*Clause 19 :*
Freight to be fully prepaid in US Dollars to Carrier`s nominated a/c within 5 banking days from completion of loading, and always prior signing/ releasing bill(s) of lading  marked " freight prepaid ". Freight is earned on pro-rata loading, discountless and non- returnable, vessel and/or cargo lost or not lost.

*Clause 20:*
With the exception of the motors and electrical panels/parts Carrier has the option to load/stow cargo ondeck at Merchant`s /Shipper`s risk, liability,and expense,and bill(s) of lading to be so claused.

*Clause 21: - Vessel's Description*

M₁ ₋os Prosperity' Single Deck Bulk Carrier (SDBC)
Built 2006 Singapore Flag
55,000mtdwt on 12.5m SSW
Loa/Bm 189.90/32.26m
5 hold/hatch Grain 69,450cbm
Cranes 4 x 30mt

*Clause 22:*
At load and discharge ports Carrier`s berth/agent/stevedores both ends.

*Clause 23:*
Carrier`s liner bill of lading form.

*Clause 24:*
Taxes/Dues/Duties/Wharfages on cargo or calculated on same, including all local terminal handling charges,to be for Merchant`s account both ends.

*Clause 25:*
Taxes/Dues/Duties/Wharfages on vessel and/or freight, or calculated on same, to be for Carrier`s account both ends.

*Clause 26:*
At load and discharge ports hooking on and off to be at Merchant's arrangement and expense.

*Clause 27:*
At load and discharge ports Merchant to deliver/receive cargo alongside vessel,within reach of ship`s tackle,as fast as the vessel can receive/deliver Saturdays,Sundays,Holidays included,as per Custom of the Port,otherwise Carrier entitled to claim damages for detention.

*Clause 28 :*
At load and discharge ports Carrier at their arrangement and expense to provide all necessary/required stevedoring equipment including wires/wire slings/spreaders/shackles for loading and discharging.

*Clause 29:*
Any special saddles and/or cradles required to support the cargo to be at Merchant`s arrangement and expense.Cargo to be fitted with suitable lashing,tie down,lifting points, and/or other adequate means of lifting ,and centre of gravity to be clearly indicated allowing Carrier to lift the cargo in equilibrium.

_Clause30 :_
Detention USD 52,000 pdpr.

_Clause 31:_
At load and and discharge ports any/all time lost waiting for berth to be at Carrier's risk and expense.

_Clause 32:_
Any floating/shoreside cranes required for loading/discharging to be at Carrier's arrangement and expense.

_Clause 33:_
Carrier to provide Merchant with 7,5,3,2,1 days notice of said vessel's ETA at both load and discharge ports.

_Clause 34:_
Carrier to guarantee that performing vessel has full and valid P+I cover, and such cover to be maintained during the currency of this charter.

_Clause 35:_
U' ' aw /London Arbitration under prevailing LMAA rules, with small claims procedure for claims/counter claims ui...er USD 50,000 to apply.

_Clause 36:_
Merchant is allowed to have 1 surveyor onboard the vessel at load and discharge ports before, after, and during loading/discharging, at surveyor's own risk and expense without liability to the Carrier. The surveyor is entitled to inspect/examine/take pictures of the cargo after loading/securing has been completed at load port, and prior to unlashing/discharging has commenced at discharge port,but is otherwise not to interfere in cargo operations.

_Clause 37:_
BIMCO Clauses to apply: Voywar 2004,ISPS,and AMS.

_Clause 38 :_
All details of this fixture are to be kept strictly private and confidential.

_____
For and behalf of the Carrier

_____
For and behalf of the Merchant

# ATTACHMENT F

## Robert Coventry (DHL ZA)

| | |
|---|---|
| **From:** | Barry Windrim [bwindrim@iafrica.com] |
| **Sent:** | Thursday, March 27, 2008 10:13 AM |
| **To:** | Steve Davies |
| **Cc:** | Robert Coventry (DHL ZA) |

**Subject:** RE: MV'COS PROSPERITY' - CANCELLATION OF BOOKING

MOST URGENT - FOR IMMEDIATE ATTENTION

steve/barry

good morning.

as per instructions received from your goodselves a FULLY FIRM booking was made on your behalf with Phoenix Shipping Dbn on the mv'cos prosperity'.

if we now cancel same at this very late stage with owner's we can expect to receive a full deadfreight claim,particularly as owner's on the basis of your booking  confirmed another cargo of 900-1,000cbm,thus giving them sufficient freight revenue to warrant the Shanghai port call.

as the cargo broker acting on behalf of DHL Projects/Bateman's i would strongly recommend that you maintain the booking on the mv'cos prosperity'.

plse urgently advise your intentions as i am obligated to advise owner's of developments.

many tks.

brgds
barry windrim
windward shipping dbn
as broker only
tel: 031-3061843
fax: 031-3063286
mob: 082-9007765
email: bwindrim@iafrica.com

----- Original Message -----
**From:** Robert Coventry (DHL ZA)
**To:** Barry Windrim
**Sent:** Thursday, March 27, 2008 7:51 AM
**Subject:** FW: Cancelation

Barry,

Have a look at the below.

Maybe you should phone Steve and tell him the ramifications.

Rgds

Rob.

**From:** Robert Coventry (DHL ZA)
**Sent:** Thursday, March 27, 2008 7:50 AM

**To:** 'Stevie D'
**Subject:** RE: Cancelation

Steve,

You have the booking note for signature. The vessel will be outside Shanghai waiting for berthing at 0600 hrs on the 29th.

Regards

Rob.

---

**From:** Stevie D [mailto:123ste@gmail.com]
**Sent:** Wednesday, March 26, 2008 8:39 PM
**To:** Robert Coventry (DHL ZA)
**Subject:** Cancelation

Dear Rob,

I am sorry to advise you that we no longer have confidence in DHL to provide us with the service we require for our Shanghai cargo.
The wait for our booking reference number is taking on the familiar look of the previous Cosco vessel drama / failure.

We had an agreement that the booking number would be received by 10h00 this morning, yet when I left the office this afternoon nothing had been received.

To add further concern we checked with the Shanghai port authority and no application has been made for this vessel to enter Shanghai port; despite the fact that this is normally done 5 days prior to arrival.

Another factor that annoyed me to distraction was the DHL China office's total lack of protocol; inspite of all the emails to yourself and DHL China; they called CITEC and advised them that the sailing will be on the 7th April without any notification to ourselves.

If this date is correct then why were we not given this information in a transparent manner?

If this is incorrect why are our suppliers being confused (once again) by the DHL China office?

It would appear that they dont have our interests at heart; or do not know what they are doing.

It would also appear that DHL South Africa is over stretched and is not being proactive on this project.

Please cancel the cargo booking; we have no choice but to move this back to Spedag.

Yours Sincerely

Stevie Davies
**Bateman Projects Limited**
Transport & Logistics Manager
Bartlett Rd, Boksburg, P.O.Box 25937
East Rand 1462



011 899 9111   Tel.
011 899 2216   Direct.
011 899 4901   Fax.
072 796 9338   Mobile.
073 207 1473   Mobile.
steve.davies@batemanengineering.com

4/3/2008

www.batemanengineering.com

_____ NOD32 2976 (20080326) Information _____

This message was checked by NOD32 antivirus system.
http://www.eset.com

# ATTACHMENT G

**Robert Coventry (DHL ZA)**

| | |
|---|---|
| **From:** | Barry Windrim [bwindrim@iafrica.com] |
| **Sent:** | Thursday, March 27, 2008 11:24 AM |
| **To:** | Steve Davies |
| **Cc:** | Robert Coventry (DHL ZA) |
| **Subject:** | RE: MV'COS PROSPERITY' - CANCELLATION OF BOOKING |

MOST URGENT - FOR IMMEDIATE ATTENTION

steve/barry

further my last as you aware Rob Coventry currently in a motor vehicle travelling to Durban,which is why i have phoned you twice to discuss said matter.

i have spoken to Phoenix Shipping Dbn,who are understandably not very happy abt the turn of events,and have reiterated their intention to charge full deadfreight. from experience i know that owner's will take every precaution to protect their claim by taking a lien on the cargo,until security has been lodged for said claim. this lien will either take place prior to loading on Spedag vessel,and hopefully not after the cargo has been loaded,because the latter scenario has some very serious consequences.

besides the issues raised with DHL i am little confused as to why you would want to cancel the booking on the mv'cos prosperity'? my understanding over the last few weeks is that this cargo is very late,and needs to arrive SA as soon as possible. Phoenix Shipping's vessel has strictly adhered to her original dates,giving a CONFIRMED eta Shanghai 0600hrs 29/3,yet the booking is being transferred to a vessel called the mv'valiant' (does she exist?) eta Shanghai 8/4. furthermore mv'cos prosperity' is sailing direct to Durban - do you know the intended itinerary of the mv'valiant'??

i am aware that you were concerned abt the loadreadiness and availabilty of cargo,  yet DHL China have confirmed that 68 packages are already in port and the balance will arrive latest monday 31/3.

assuming Phoenix Shipping are willing to negotiate the deadfreight claim believe at best it will still amount to +/- usd 200K,whilst 1-2 days detention on the vessel,if incurred,is only going to cost max usd 100K.

would respectfully request you to urgently re-consider your decision.

many tks.

brgds
barry windrim
windward shipping dbn
as broker only
tel: 031-3061843
fax: 031-3063286
mob: 082-9007765
email: bwindrim@iafrica.com

----- Original Message -----
From: Barry Windrim
To: Steve Davies
Cc: Robert Coventry (DHL ZA)
Sent: Thursday, March 27, 2008 10:13 AM
Subject: RE: MV'COS PROSPERITY' - CANCELLATION OF BOOKING

MOST URGENT - FOR IMMEDIATE ATTENTION

steve/barry

good morning.

4/3/2008