UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHOENIX SHIPPING CORPORATION,

                    Plaintiff,

    -against-

DHL GLOBAL FORWARDING (PTY) LTD,
a/k/a DHL INDUSTRIAL PROJECTS
DIVISION, JOHANNESBURG,

                    Defendant.

**08 Civ 6325 (RJS)**

**DECLARATION OF
BARRY WINDRIM**

BARRY WINDRIM, pursuant to Section 1746 of Title 28 of the United States Code, hereby declares and says the following under penalty of perjury:

1.    I am the majority shareholder and a director of Windward Shipping of Durban, South Africa. Windward Shipping is an independent broker which has acted on several occasions on behalf of DHL Global Forwarding (Pty) Ltd. ("DHL").

2.    I have reviewed the motion and supporting declaration of Robert Coventry of DHL filed by DHL in the Rule B attachment action brought by Phoenix Shipping Corporation ("PHOENIX") in the United States District Court for the Southern District of New York in which DHL seeks to vacate the attachment of its funds. I submit this Declaration in opposition to the motion and to set forth the true facts concerning the contract entered between PHOENIX and DHL.

3.    In March 2008 I was involved in negotiations for a charter on behalf of DHL with PHOENIX to load a part cargo of about 691mt/1,703cbm/1,711ftons ball mill

NYDOCS1/310933.1

shells and accessories from Shanghai, China to Durban, South Africa aboard the M/V COS PROSPERITY.

4.      This cargo, which I understood was being purchased by DHL's customer Bateman Engineered Technologies and supplied by CITIC, had previously been booked to be carried aboard a vessel operated by SPEDAG called the M/V SELINDA but that booking was cancelled. Acting as broker on behalf of DHL, I contacted PHOENIX and asked that they quote a freight rate for carriage of the cargo. PHOENIX provided a freight rate of $160 per ton. The freight rate and the details of the PHOENIX vessel were provided to DHL as of 18 March.

5.      Thereafter there were a number of further exchanges which I passed back and forth between PHOENIX and DHL as to various terms concerning the carriage of the cargo. Upon agreement having been reached as to the essential terms for the carriage on or about 20 March, on 25 March 2008 I sent an e-mail message to PHOENIX recapping the terms of the charter agreement, confirming this was a fully firm booking for the subject cargo, and requesting PHOENIX to confirm that the recap was an accurate record of the agreed terms. On 26 March 2008 PHOENIX confirmed its agreement to the recap with the exception of a minor change, namely insertion of the rate for detention. This exchange is attached hereto as Exhibit 1.

6.      On 26 March 2008 at 2:53 p.m. I sent an e-mail to Robert Coventry of DHL confirming on DHL's behalf the fully firm booking with PHOENIX and recapping the terms. These were the exact same terms as set forth in my e-mail to PHOENIX of the prior day save for the change in the detention rate. This e-mail is attached hereto as Exhibit 2.

7.      It is my definite understanding (i.e. that I have no doubt in my mind whatsoever) that in entering into the charter with PHOENIX it was DHL's intention to do so for its own account rather than as agent for the cargo purchaser Bateman. This is consistent with the approximately 4 or 5 cargoes for which I have acted as independent broker on behalf of DHL, all of which involved freight bookings entered by DHL for its own account.

8.      DHL operates as a NVOCC/freight forwarder and typically, as it did in this case, enters into charters on its own account with vessel owners (or disponent owners). DHL then enters into a separate contractual agreement, often on a CONLINE booking note form, with its customer (which actually supplies the cargo). The CONLINEBOOKING 2000 form is intended to be the separate contract between DHL and its customer such as Bateman and governs the terms of their respective relationship.

9.      In entering separate agreements with the vessel owner and its customer DHL charges its customer a slightly greater freight rate than the rate charged DHL by the ship owner, thus making a profit on the margin. In this particular case, as demonstrated by the recap and the CONLINE 2000 booking note dated 20 March 2008 (which is appended as attachment B to DHL's Motion to Vacate and as Attachment E to the Coventry Declaration), the rate charged to DHL by PHOENIX was $160/ton while DHL was charging its customer Bateman $165/ton. Thus, DHL was poised to make a profit of $5/ton on the carriage of Bateman's cargo.

10.      I prepared the booking note appended as Attachment E to the Coventry declaration at the request and on behalf of Mr. Coventry as per his direction. The booking note was prepared expressly so as to be on "back-to-back" terms with the recap

between PHOENIX and DHL in order to protect the position of DHL in respect of any claim being made either up or down the chain of charters. The 20 March 2008 booking note was prepared that day, however, because of the Easter Holiday I did not prepare the recap until I returned to the office on 25 March despite agreement on the terms of the contract having been reached on the 20th.

11.    Mr. Coventry's contention in ¶ 12 of his declaration that the booking note was a mere draft and contained serious errors is belied by the fact that, as admitted by Mr. Conventry at ¶ 12, he received the booking note from myself and forwarded it to Bateman for signature and return on 26 March. One certainly would not forward a "mere draft" or a document containing "serious errors" to be signed by DHL's customer and cargo supplier.

12.    As to the 20 March 2008 e-mail from Mr. Davies of Bateman referenced at ¶ 7 and attached as Attachment A of Mr. Coventry's declaration, as Bateman was DHL's customer, Mr. Davies normally would have communicated with Mr. Coventry who then should have passed along the request to myself. On this occasion, however, Mr. Coventry was tied up with something and having spoken to me on the phone advised that Mr. Davies would contact me direct. Mr. Davies was not previously known to me so he could have only have obtained my mobile number from Mr. Coventry.

13.    As to Mr. Coventry's contentions at ¶ 7 and 10 of declaration that I was acting as "the agent for Phoenix Shipping Corporation", that statement is untrue. I did not act at any time in connection with this transaction as agent or broker on behalf of PHOENIX. Further, I would point out that if I were the "agent" for PHOENIX there is no reason for me to have proposed other vessels to DHL.

14.    This statement is borne out by Mr. Coventry's own 20 March 2008 e-mail to myself (see Coventry Declaration ¶ 8 and Attachment A) in which Mr. Coventry requested that the booking be confirmed via him.

15.    That I was acting as broker on behalf of DHL is further borne out in my e-mail of 21 March 2008 to Mr. Coventry noting that "I have been negotiating this booking on your behalf" (see Coventry Decl. Attachment B).

16.    As to ¶ 15 and Exhibit F to the Coventry declaration, following Bateman's cancellation of its booking with DHL, on 27 March 2008 Mr. Coventry (who was away from the office) requested that I contact Mr. Davies on his behalf to try and resolve the matter with Bateman. Being unable to reach him on the telephone, I sent Mr. Davies the e-mail which stated "as per instructions received from your goodselves, a FULLY FIRM booking was made on your behalf." To suggest that this email is suggestive of a contract having been entered directly between PHOENIX and Bateman is nothing more than a poor exercise in semantics.

17.    Again on 27 March I wrote to Mr. Davies of Bateman to convey PHOENIX's displeasure of the cancellation of the charter and to remind both Bateman and DHL that PHOENIX reserves its rights in respect to damages arising from the cancellation.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Durban, South Africa
August 20, 2008

BARRY WINDRIM

# EXHIBIT 1

**Declaration of Barry Windrim**

**Geoff Doe**                     Annexure A

| | |
|---|---|
| From: | Geoff Doe |
| Sent: | 26 March 2008 15:53 |
| To: | Winward Shipping Dbn |
| Subject: | RE: MV'COS PROSPERITY' - BALL MILLS CHINA/SA A/C DHL |

BARRY/GEOFF

APOLOGISE FOR LATE RESPONSE..

RECAP IN ORDER, JUST TO INSERT USD 52,000 DETENTION.

MTKS/RGDS

-----Original Message-----
From: Barry Windrim [mailto:bwindrim@iafrica.com]
Sent: 25 March 2008 09:11
To: All
Subject: RE: MV'COS PROSPERITY' - BALL MILLS CHINA/SA A/C DHL

MOST URGENT - FOR IMMEDIATE ATTENTION

 duncan-geoff/barry

good morning

with reference to our various exchanges of last week on behalf of merchant plsd to recap
and confirm a FULLY FIRM booking as follows:

- mv'cos prosperity'
  (plse provide vsl's description)

FOR

- a/c DHL Industrial Projects Div,Johannesburg
- bss part cgo
- ttl abt 691mt/1,703cbm/1,711ftons being ball mill shells and
  accessories as per attached p/lists max pw 42mt
- cargo is partly stackable/over stowable,with certain loose/
  unprotected items,but is owise suitably packaged and prepared
  for ocean transportation
- Shanghai/Durban
- laycan 28 march - 5 april 2008 (plse advise vsl's latest eta?)
- freight bss min 1,700ftons usd 160 w/m all-in FLT hook/hook
- freight to be fully prepaid in us dollars to carrier's
  nominated a/c within 5 banking days from completion of
  loading,and always prior s/r b/l marked "freight prepaid".
  freight is earned on pro-rata loading,discountless and
  non-returnable,vessel and/or cargo lost or not lost
- at load and discharge ports hooking on/off to be at
  merchant's arrangement and expense
- any floating/shoreside cranes required for loading/discharging to
  be at carrier's risk,arrangement,and expense
- with the exception of the motors and electrical panels/
  parts carrier has the option to load/stow cargo ondeck at
  merchant's/shipper's risk,liability,and expense,and bill of
  lading to be so claused
- carrier's berth/agent/stevedores bends
- carrier's liner bill of lading form
- taxes/dues/duties/wharfages on cargo or calculated on
  same,including all local terminal handling charges,to be
  for merchant's a/c bends
- taxes/dues/duties/wharfages on vessel and/or freight or

1

   calculated on same to be for carrier's a/c bends
- at load and discharge ports carrier at their arrangement
  and expense to provide all necessary/required
  stevedoring equipment incl wires/wire slings/spreaders/
  shackles for loading and discharging
- any special saddles and/or cradles required to support
  the cargo to be at merchant's arrangement and expense.
  cargo to be fitted with suitable lashing,tie down,and
  lifting points and/or other adequate means of lifting,and
  centre of gravity to be clearly indicated allowing carrier
  to lift the cargo in equilibrium
- at load and discharge ports merchant to deliver/receive
  cargo alongside vessel,within reach of ship's tackle,as
  fast as the vessel can receive/deliver SSHINC as per
  COP,owise carrier entitled to claim damages for detention
- detention ~~us~~ $1,000 (a day (a dam
- ~~at load and discharge ports any/all time lost waiting for~~
  berth to be at carrier's risk and expense
- carrier to guarantee that performing vessel has full and
  valid P&I cover,and such cover to be maintained during
  the currency of this charter
- merchant is allowed to have 1 surveyor onboard the
  vessel at load and discharge ports before,after,and
  during loading/discharging,at surveyor's own risk and
  expense without liability to the carrier. the surveyor is
  entitled to inspect/examine/take pictures of the cargo
  after loading/securing has been completed at load
  port,and prior to unlashing/discharging has commenced
  at discharge port,but is owise not to interfere in cargo operations
- UK Law/London Arbitration under prevailing LMAA
  rules,with small claims procedure for claims/counter
  claims under usd 50,000
- Bimco Clauses to apply: Voywar 2004,ISPS,and AMS
- sub terms/conditions/details conline b/n 2000
- 3.75pct ttl

ENDS

plse confirm by return your agreement with the above.

plse also advise full style/address/contact details of load port agent,along with
intended berthing details/prospects?

with regards to the loading of the motors and electrical panels/parts underdeck plse
advise owner's intentions,as chrtr's more than a little reluctant to have same stowed on
top of bulk petcoks?

owise trust all in order,and many thanks for the fixture.

brgds
barry windrim
windward shipping dbn
as broker only
tel: 27-31-3061843
fax: 27-31-3063286
mob: 27-82-9007765
email: bwindrim@iafrica.com

2

# EXHIBIT  2

## Declaration of Barry Windrim

**Geoff Doe**                           Annexure A.

| | |
|---|---|
| From: | Geoff Doe |
| Sent: | 26 March 2008 15:53 |
| To: | Winward Shipping Dbn |
| Subject: | RE: MV'COS PROSPERITY' - BALL MILLS CHINA/SA A/C DHL |

BARRY/GEOFF

APOLOGISE FOR LATE RESPONSE..

RECAP IN ORDER,JUST TO INSERT USD 52,000 DETENTION.

MTKS/RGDS

-----Original Message-----
From: Barry Windrim [mailto:bwindrim@iafrica.com]
Sent: 25 March 2008 09:11
To: All
Subject: RE: MV'COS PROSPERITY' - BALL MILLS CHINA/SA A/C DHL

MOST URGENT - FOR IMMEDIATE ATTENTION

 duncan-geoff/barry

good morning

with reference to our various exchanges of last week on behalf of merchant plsd to recap
and confirm a FULLY FIRM booking as follows:

- mv'cos prosperity'
  (plse provide vsl's description)

FOR

- a/c DHL Industrial Projects Div,Johannesburg
- bss part cgo
- ttl abt 691mt/1,703cbm/1,711ftons being ball mill shells and
  accessories as per attached p/lists max pw 42mt
- cargo is partly stackable/over stowable,with certain loose/
  unprotected items,but is owise suitably packaged and prepared
  for ocean transportation
- Shanghai/Durban
- laycan 28 march - 5 april 2008 (plse advise vsl's latest eta?)
- freight bss min 1,700ftons usd 160 w/m all-in FLT hook/hook
- freight to be fully prepaid in us dollars to carrier's
  nominated a/c within 5 banking days from completion of
  loading,and always prior s/r b/l marked "freight prepaid".
  freight is earned on pro-rata loading,discountless and
  non-returnable,vessel and/or cargo lost or not lost
- at load and discharge ports hooking on/off to be at
  merchant's arrangement and expense
- any floating/shoreside cranes required for loading/discharging to
  be at carrier's risk,arrangement,and expense
- with the exception of the motors and electrical panels/
  parts carrier has the option to load/stow cargo ondeck at
  merchant's/shipper's risk,liability,and expense,and bill of
  lading to be so claused
- carrier's berth/agent/stevedores bends
- carrier's liner bill of lading form
- taxes/dues/duties/wharfages on cargo or calculated on
  same,including all local terminal handling charges,to be
  for merchant's a/c bends
- taxes/dues/duties/wharfages on vessel and/or freight or

1

calculated on same to be for carrier's a/c bends
- at load and discharge ports carrier at their arrangement
  and expense to provide all necessary/required
  stevedoring equipment incl wires/wire slings/spreaders/
  shackles for loading and discharging
- any special saddles and/or cradles required to support
  the cargo to be at merchant's arrangement and expense.
  cargo to be fitted with suitable lashing,tie down,and
  lifting points and/or other adequate means of lifting,and
  centre of gravity to be clearly indicated allowing carrier
  to lift the cargo in equilibrium
- at load and discharge ports merchant to deliver/receive
  cargo alongside vessel,within reach of ship's tackle,as
  fast as the vessel can receive/deliver SSHINC as per
  COP,owise carrier entitled to claim damages for detention
- detention usd 51,000 ~~(in Day ~~ ~~/ro data~~
- ~~bt load and discharge ports any/all time lost waiting for~~
  berth to be at carrier's risk and expense
- carrier to guarantee that performing vessel has full and
  valid P&I cover,and such cover to be maintained during
  the currency of this charter
- merchant is allowed to have 1 surveyor onboard the
  vessel at load and discharge ports before,after,and
  during loading/discharging,at surveyor's own risk and
  expense without liability to the carrier. the surveyor is
  entitled to inspect/examine/take pictures of the cargo
  after loading/securing has been completed at load
  port,and prior to unlashing/discharging has commenced
  at discharge port,but is owise not to interfere in cargo operations
- UK Law/London Arbitration under prevailing LMAA
  rules,with small claims procedure for claims/counter
  claims under usd 50,000
- Bimco Clauses to apply: Voywar 2004,ISPS,and AMS
- sub terms/conditions/details conline b/n 2000
- 3.75pct ttl

ENDS

plse confirm by return your agreement with the above.

plse also advise full style/address/contact details of load port agent,along with
intended berthing details/prospects?

with regards to the loading of the motors and electrical panels/parts underdeck plse
advise owner's intentions,as chrtr's more than a little reluctant to have same stowed on
top of bulk petcoke?

owise trust all in order,and many thanks for the fixture.

brgds
barry windrim
windward shipping dbn
as broker only
tel: 27-31-3061843
fax: 27-31-3063286
mob: 27-82-9007765
email: bwindrim@iafrica.com