377-08/MEU
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PHOENIX SHIPPING CORPORATION,

                                                          **08 CIV 6325 (RJS)**

                            Plaintiff,

    -against-

DHL GLOBAL FORWARDING (PTY) LTD,
a/k/a DHL INDUSTRIAL PROJECTS DIVISION,
JOHANNESBURG,

                            Defendant.
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION
## TO VACATE THE ATTACHMENT

                                          FREEHILL HOGAN & MAHAR, LLP
                                          Attorneys for Plaintiff
                                          PHOENIX SHIPPING CORPORATION
                                          80 Pine Street
                                          New York, NY 10005
                                          (212) 425-1900 / (212) 425-1901 fax

<u>Of Counsel</u>
Michael E. Unger (MU 0045)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES — ii

PRELIMINARY STATEMENT — 1

ARGUMENT

    POINT I

    IN ORDER TO SUSTAIN THE ATTACHMENT, PHOENIX NEED ONLY SHOW THAT IT HAS STATED A *PRIMA FACIE* MARITIME CLAIM AND NEED NOT PROVE THE MERITS OF ITS CLAIM — 2

        A.   Phoenix Has Set Forth A Valid *Prima Facie* Maritime Claim Against DHL — 5

        B.   DHL's Purported Status As An Agent Does Not Render Impotent The Breach of Contract Allegation — 6

    POINT II

    EVEN IF THE COURT CONSIDERS THE MERITS OF THE UNDERLYING CLAIM, THERE IS MORE THAN SUFFICIENT EVIDENCE TO UPHOLD THE ATTACHMENT — 7

    POINT III

    DHL AGREED TO ARBITRATE THE CLAIM MADE BY PHOENIX AND THAT ARBITRATION HAS BEEN COMMENCED — 11

    POINT IV

    PHOENIX'S VERIFIED COMPLAINT WAS PROPERLY "VERIFIED" — 13

CONCLUSION — 15

# TABLE OF AUTHORITIES

**Cases**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2006) ............................ 2, 3, 4

Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761
(S.D.N.Y. Oct. 25, 2005) ................................................................................................. 4

Glory Wealth Shipping Services Ltd. v. Five Ocean Corp., 2008 U.S. Dist.
LEXIS 60967 (S.D.N.Y. Aug. 1, 2008) (Marrero, J.) ...................................................... 3, 4, 11

In re Great Circle Lines, Ltd., 681 F.2d 121 (2d 1982) ................................................................ 7, 8

Padre Shipping, Inc. v. Yong He Shipping, 553 F.Supp.2d 328
(S.D.N.Y. 2008) (Keenan, J.) ........................................................................................ 3, 4, 5, 6, 8

Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising, Committee, 511
F.Supp.2d 399 (S.D.N.Y. 2007) (McMahon, J.) ............................................................. 3, 4, 11

San Juan Navigation (Sinapore) Pte. LTd. v. Trans Power, Order at p. 6,
08 Civ. 1562 (RMB) (July 28, 2008) (Berman, J.) ......................................................... 10

Sixteen Thirteen Marine S.A. v. Congentra A.G., 2008 U.S. Dist.
LEXIS 56271 (S.D.N.Y. July 25, 2008) (Baer, J.) .......................................................... 3, 4, 6

SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562
(S.D.N.Y. March 15, 2007) (Karas, J.) ........................................................................... 3, 4

T & O Shipping, Ltd. v. Lydia Mar Shipping Co., 415 F.Supp.2d 310
(S.D.N.Y. 2006) ............................................................................................................. 11

Thyssen, Inc. v. M/V MARKOS N, 1999 U.S. Dist. LEXIS 12578
(S.D.N.Y. Aug. 19, 1999) ............................................................................................... 8

Tide Line Inc. v. Eastrade Commodities Inc., 2006 U.S. Dist. LEXIS 95870
(S.D.N.Y. Aug. 15, 2006) (Wood, J.) ............................................................................. 3

Transportes Navieros Y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport, 2007
U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) (Preska, J.) ....................................... 3

United States v. $84,740.00 Currency, 900 F.2d 1402 (9th Cir. 1990) ....................................... 13

Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2002) ............................................................. 2

## **PRELIMINARY STATEMENT**

This Memorandum of Law is submitted on behalf of Plaintiff Phoenix Shipping Corporation (hereinafter "Phoenix"), together with the Declarations of Joseph Mays and Barry Windrim, in opposition to the motion of Defendant DHL Global Forwarding (Pty) Ltd (hereinafter "DHL") which seeks to vacate the maritime attachment previously authorized to be issued by this Court.

Plaintiff Phoenix's dispute with Defendant DHL stems from a rather unremarkable claim of breach of a maritime contract of carriage. Phoenix and DHL were parties to a contract of carriage which obligated DHL to provide a cargo for loading aboard Phoenix's ship at Shanghai, China. DHL breached the contract by failing to provide the cargo as agreed. The contract provided for certain damages in favor of Phoenix in the event of DHL's failure to perform. DHL has failed pay deadfreight under the terms of the contract and in response to a demand by Phoenix. Accordingly, Phoenix commenced arbitration proceedings in accordance with the agreement between the parties and seeks by this action to secure its claims against DHL for breach of the contract, pending the result of the arbitral proceedings.

DHL now moves under Supplemental Admiralty Rule E(4)(f) to vacate the attachment of its property on three grounds - none of which establishes a valid basis for vacature in this case. First, DHL asserts that Phoenix has failed to allege a *prima facie* maritime claim. This argument must fail since both the original Verified Complaint and Amended Verified Complaint clearly set forth valid *prima facie* maritime claims against DHL. Second, DHL claims that the Verified Complaint contains "egregious and false statements" which do not support the attachment Order. This argument similarly fails in that, as set forth in the accompanying Declarations of Messrs. Mays and Windrim, DHL's suggestion of factual "errors" is simply untrue. Finally, DHL asserts

that the Verified Complaint was improperly verified by Phoenix via undersigned counsel. This argument is unfounded as a matter of law.

For the reasons provided below, Phoenix has satisfied its burden under the Supplemental Admiralty Rules to show that the maritime attachment should not be vacated. Accordingly, DHL's motion to vacate should be denied and an award of costs and attorneys fees should issue in favor of Phoenix.

DHL has confused the straightforward nature of this attachment action by attempting to place into question collateral facts which are immaterial to the well-defined parameters of a Rule E(4)(f) motion. The Court is respectfully referred to the Declarations of Messrs. Mays and Windrim as to the salient facts in respect to the issues raised by DHL.

## ARGUMENT

## POINT I

### IN ORDER TO SUSTAIN THE ATTACHMENT, PHOENIX NEED ONLY SHOW THAT IT HAS STATED A *PRIMA FACIE* MARITIME CLAIM AND NEED NOT PROVE THE MERITS OF ITS CLAIM

It is well established that in order for a plaintiff to maintain an attachment pursuant to Supplemental Admiralty Rule B, the plaintiff must have asserted a valid *prima facie* maritime claim against the defendant. Supplemental Admiralty Rules A, B and E; Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2002); Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2006).

Despite that DHL invites the Court to review materials outside the pleadings and seems to attack the allegations asserted in the Verified Complaint on the merits, the Court should resist any temptation to involve itself in a detailed review of the factual and legal matters which are to be decided in the London arbitration.

The Court's inquiry on this vacature motion is a limited one. Transportes Navieros Y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport, 2007 U.S. Dist. LEXIS 50260, at *9 (S.D.N.Y. July 6, 2007) (Preska, J.). Indeed, the Second Circuit in Aqua Stoli, 460 F.3d at 445, held that a fact-intensive inquiry is "improper because Rule B specifies the sum total of what must be shown for a valid maritime attachment". Following Aqua Stoli's lead, the majority of Judges in this District have adopted the limited inquiry contemplated by the Second Circuit when considering whether a maritime claim which has been alleged is *prima facie* valid. Tide Line Inc. v. Eastrade Commodities Inc., 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006) (Wood, J.); Transportes Navieros, 2007 U.S. Dist. LEXIS 50260, at *9; Padre Shipping, Inc. v. Yong He Shipping, 553 F.Supp.2d 328, 331 (S.D.N.Y. 2008) (Keenan, J.); Glory Wealth Shipping Services Ltd. v. Five Ocean Corp., 2008 U.S. Dist. LEXIS 60967, at *7 (S.D.N.Y. Aug. 1, 2008) (Marrero, J.); Sixteen Thirteen Marine S.A. v. Congentra A.G., 2008 U.S. Dist. LEXIS 56271, at *15-19 (S.D.N.Y. July 25, 2008) (Baer, J.); Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising, Committee, 511 F.Supp.2d 399, 403-04 (S.D.N.Y. 2007) (McMahon, J.); SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 2007 U.S. Dist. LEXIS 18562, at *8-9 (S.D.N.Y. March 15, 2007) (Karas, J.).

Under this less burdensome *prima facie* standard, a plaintiff is not required to produce any evidence at this stage to support its allegations. Transportes Navieros, 2007 U.S. Dist. LEXIS 50260, at *11-12; Padre, 553 F.Supp.2d at 332; SPL, 2007 U.S. Dist. LEXIS 18562, at *10; Sixteen, 2008 U.S. Dist. LEXIS 56271, at *18; Ronda, 511 F.Supp.2d at 10. Rather, its Verified Complaint should suffice. Id. Thus, plaintiffs are not required to prove their case before a district court when defending a motion to vacate an attachment. Transportes Navieros, 2007 U.S. Dist. LEXIS 50260 at *12 (upholding attachment based on allegations in verified

complaint); Padre, 553 F.Supp.2d at 333 (finding valid *prima facie* maritime claim because complaint stated facially valid claim for breach of maritime contract); SPL, 2007 U.S. Dist. LEXIS 18562, at *3 (looking "only to Plaintiff's pleadings, and not to any evidence submitted by the Parties, to determine whether Plaintiff has made a legally sufficient claim"); Sixteen, 2008 U.S. Dist. LEXIS 56271 (declining "to engage in a 'reasonable grounds,' or 'probable cause,' inquiry that would impose…'the burden of presenting some evidence' in support of the allegations in the complaint on the plaintiff); Ronda, 511 F.Supp.2d at 10 (considering only plaintiff's pleadings to determine whether a *prima facie* valid claim was demonstrated).

DHL argues that the attachment should be vacated because Phoenix has failed to allege a *prima facie* maritime claim.[1]  At this stage of the proceedings though the Court can only conclude that Phoenix's claims are *prima facie* valid and the attachment must therefore be maintained.  Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761, *4 (S.D.N.Y. Oct. 25, 2005) (a court "should be reluctant to prejudge the merits of claims based essentially on the pleadings and a sparse record consisting of a few documents, in advance of any discovery….particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country"); Glory, 2008 U.S. Dist. LEXIS 60967 at *11; Ronda, 511 F.Supp.2d at 404 (declining to entertain the merits of claim which was pending in arbitration); Padre, 553 F.Supp.2d at 334 (finding defendant's challenge to be "a merits issue that cannot be resolved by reference to the Complaint, and is more properly the subject of the contemplated litigation in China"); Sixteen, 2008 U.S. Dist. LEXIS 56271 (disregarding defendant's supporting evidence in favor of evaluation of the merits by the London arbitrators).

---

[1] DHL does not assert that it is found in the district, that it has no property located in the district or that there is a statutory or maritime law bar to the attachment. Aqua Stoli, 460 F.3d at 445. Nor does DHL cite any other deficiency with respect to the attachment's validity.

NYDOCS1/310900.2                                      4

For the reasons explained below, DHL's arguments are wholly unavailing and disregard the well-defined parameters of this vacatur motion.

A. **Phoenix Has Set Forth A Valid *Prima Facie* Maritime Claim Against DHL**

For a maritime attachment to be valid, Rule E(2)(a) requires that the complaint "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleadings". In Padre, Judge Keenan unilaterally found that the defendant could not dispute that the complaint stated the facts with sufficient particularity to allow the defendant "to commence an investigation of the facts and to frame a responsive pleading". Upon reviewing the complaint in that case, Judge Keenan concluded that:

> The Complaint alleges that [defendant] violated the Authorization Letter by issuing without proper authority bills of lading that were marked "freight prepaid" and by failing to incorporate the terms of the charter party into those bills. The Complaint further avers that [defendant's] breach prevented [plaintiff] from exercising a lien on the cargo. The Complaint's factual allegations state the circumstances giving rise to [plaintiff's] claim against [defendant] with enough specificity under Supplemental Rule E(2)(a).

553 F.Supp.2d at 333.

Phoenix's Verified Complaint clearly meets the test. The Verified Complaint alleged that on or about March 25, 2008, DHL, as agent for Bateman, entered into a contract of carriage with Phoenix, as carrier, for the ocean transportation of a cargo of 1,711 ftons of ball mill shells and accessories aboard the M/V COS PROSPERITY from Shanghai to Durban. The Verified Complaint alleged that DHL was obligated under the contract to tender a minimum amount of

cargo and that DHL failed to do so, resulting in deadfreight being owed to Phoenix which has not been paid.

Indeed, DHL "has demonstrated its ability to investigate the facts and construct a response by submitting extensive materials and legal arguments in connection with this motion". Sixteen, 2008 U.S. Dist. LEXIS 56271, at *19. DHL's argument that a more definite statement is required for it to respond to the Verified Complaint must be rejected.

**B.    DHL's Purported Status As An Agent Does Not Render Impotent The Breach of Contract Allegation**

Although not expressly stated, DHL implies that because it allegedly entered into the contract with Phoenix acting as an "agent" for Bateman, somehow should result in a finding that Phoenix has not stated a valid *prima facie* maritime claim against it. This is not so. In any event, Phoenix, in its Amended Verified Complaint, makes clear the alternative arguments as to DHL's liability for breach of the contract. The Amended Verified Complaint sets forth that DHL is either liable directly based upon having contracted with Phoenix for its own account or, alternatively, is liable based upon having entered into the contract as agent for Bateman.[2]

Even if DHL did contract with Phoenix as agent acting on behalf of Bateman, which is expressly denied, as set forth in the accompanying Mays Declaration, this does not lead to the conclusion, as a matter of English law, that DHL cannot be liable for breach of the charter. The CONLINEBOOKING note defines the "merchant" as including <u>both</u> the shipper and the owner of the cargo and any person entitled to possession. Thus there is a good faith argument that DHL is a party to the contract as the shipper while Bateman is a party as owner of the goods.

---

[2] Under the Federal Rules, "plaintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe allegations regarding one claim to be an admission against another". Padre, 533 F.Supp.2d at 332 (citation omitted).

Accordingly, it is possible that Phoenix could succeed on a claim against either DHL or Bateman. (Mays Decl. ¶¶ 7-8, 11-12).

## POINT II

### EVEN IF THE COURT CONSIDERS THE MERITS OF THE UNDERLYING CLAIM, THERE IS MORE THAN SUFFICIENT EVIDENCE TO UPHOLD THE ATTACHMENT

Precisely because DHL recognizes that Phoenix has satisfied its Rule B *prima facie* showing, in an effort to shift the Court's focus, DHL argues that Phoenix has made "false or incorrect" allegations in the Verified Complaint. DHL, though, has not pointed to any allegation which it purports to be "false or incorrect" which would have impacted upon the Court's decision as to whether the attachment should have been issued. Rather, DHL attacks Phoenix's claim on the merits under the guise of a challenge to the sufficiency and veracity of the allegations set forth in the Verified Complaint (which has now been superseded by the Amended Verified Complaint). We below address the "factual inaccuracies" raised by DHL.[3]

Phoenix's claim arises out of the maritime contract of carriage it entered into directly with DHL. DHL claims that the "only document" it was provided was "a CONLINE BOKKING [sic] 2000 form" dated March 20, 2008 and suggests, without specifically stating so, that this was the intended to evidence the contract with Phoenix. (*See* Pl. Motion to Vacate p. 4) This is plainly false. DHL, through its broker Windward, negotiated and agreed to a contract of carriage with Phoenix. The terms of this contract were memorialized in the recap[4] sent to both DHL and Phoenix which recorded the main terms of the agreement between the parties and expressly

---

[3] The typographical error at ¶ 12 of the Verified Complaint, incorrectly identifying the Plaintiff as "Belli" rather than "Phoenix" has been corrected in the Amended Verified Complaint.

[4] As explained by the Second Circuit, a "fixture recap is understood in the industry to be a recapitulation of the main terms that had been agreed upon in the negotiation of a charter party". In re Great Circle Lines, Ltd., 681 F.2d 121, 123 (2d 1982)

incorporated the terms and conditions of the CONLINEBOOKING 2000 form. (Windrim Decl. ¶¶ 4-6; Exs. 1-2). The contractual obligations memorialized in the recap (including the agreement to arbitrate disputes arising thereunder in London with English law to apply) are legally binding on DHL, both in England (which law governs the merits of the underlying dispute) (Mays Decl. ¶ 6), and in the United States[5], see In re Great Circle Lines, Ltd., 681 F.2d at 124-25; Thyssen, Inc. v. M/V MARKOS N, 1999 U.S. Dist. LEXIS 12578 (S.D.N.Y. Aug. 19, 1999).

To the extent that the Verified Complaint described at ¶ 4 the contract as "a firm booking note on the CONLINEBOOKING 2000 form" instead of as a "voyage charter" "confirmed by a recap dated on or about March 25, 2008 which incorporated the terms and conditions of the CONLINEBOOKING 2000 booking note form", it was an inadvertent inaccuracy that had no bearing on the validity of the attachment. This has now been brought to Phoenix's attention and clarified in the Amended Verified Complaint at ¶¶ 4-5.[6]

DHL also contends that it cannot be liable under the contract by purporting that it was Bateman (not DHL) which had entered into the contract of carriage with Phoenix. This contention is unsupportable. DHL identifies no email or other communication demonstrating

---

[5] In applying the *prima facie* standard, courts have been satisfied so long as the complaint merely demonstrates that the plaintiff's claim is "cognizable in admiralty....one which will support admiralty jurisdiction." Padre, 553 F.Supp.2d at 332 (citations omitted). These courts find it unnecessary to determine which law applies to the merits of the claim. Id. Phoenix submits that English law governs the merits the underlying dispute, though, given the limited inquiry before the Court, we also provide Your Honor with authority to support a finding of *prima facie* claim "cognizable in admiralty" under federal maritime law.

[6] To the extent that DHL were to argue that the amendments in the Amended Verified Complaint should not be considered, Phoenix notes that because the allegations "asserted in the amended pleading arose out of the conduct...set forth in the original pleading", those allegations relate back to the initial filing date of the Verified Complaint. Fed. R. Civ. P. 15(c)(2); San Juan Navigation (Sinapore) Pte. LTd. v. Trans Power, Order at p. 6, 08 Civ. 1562 (RMB) (July 28, 2008) (Berman, J.).

privity of contract between Bateman and Phoenix. DHL only points to an email dated March 20, 2008, sent at 2:15 p.m. by Bateman to Windward (DHL's broker) and DHL, in which Bateman gave the "go ahead" to book the cargo with Phoenix. (Conventry Decl., Exhibit A). Setting aside for the moment the clear statement in the recap that it was for the account of DHL, Mr. Windrim of Windward explains that, as Bateman was DHL's customer, Bateman normally would have communicated with Mr. Coventry of DHL who then should have passed along the request to Mr. Windrim. However, on this occasion Mr. Coventry was tied up and told Mr. Windrim that Bateman would contact him directly. (Windrim Decl. ¶ 12).

In fact, Mr. Windrim explains in his Declaration at length that DHL's contention that it acted merely as Bateman's agent in entering the contract with Phoenix is untrue. It is his definite understanding that in entering into the charter with Phoenix it was DHL's intention to do so for its own account rather than as agent for the cargo purchaser Bateman. This is consistent with the approximately 4 or 5 cargoes for which he had acted as independent broker on behalf of DHL, all of which involved freight bookings entered by DHL for its own account.

Mr. Windrim goes on to explain that DHL operates an NVOCC/freight forwarder and typically, as it did in this case, enters into charters on its own account with vessel owners (or disponent owners). DHL then enters into a separate contractual agreement, often on a CONLINE booking note form, with its customer (which actually supplies the cargo). The CONLINEBOOKING 2000 form is intended to be the separate contract between DHL and its customer such as Bateman and governs the terms of their respective relationship. In entering separate agreements with the vessel owner and its customer, DHL charges its customer a slightly greater freight rate than the rate charged DHL by the ship owner, thus making a profit on the margin. In this particular case, as demonstrated by the recap and the CONLINE 2000 booking

note dated 20 March 2008 (which is appended as attachment B to DHL's Motion to Vacate and as Attachment E to the Coventry Declaration), the rate charged to DHL by PHOENIX was $160/ton while DHL was charging its customer Bateman $165/ton. Thus, DHL was poised to make a profit of $5/ton on the carriage of Bateman's cargo.

Mr. Windrim prepared the booking note appended as Attachment E to the Coventry declaration at the request and on behalf of Mr. Coventry and as per his direction. The booking note was prepared expressly so as to be on "back-to-back" terms with the recap between PHOENIX and DHL in order to protect the position of DHL in respect of any claim being made either up or down the chain of contracts. The March 20, 2008 booking note was prepared that day, however, because of the Easter Holiday Mr. Windrim did not prepare the recap until he returned to the office on March 25 despite agreement on the terms of the contract having been reached on the 20th.

Mr. Coventry's contention in ¶ 12 of his Declaration that the booking note was a mere draft and contained serious errors is belied by the fact that, as admitted by Mr. Conventry at ¶ 12, he received the booking note from Mr. Windrim and forwarded it to Bateman for signature and return on March 26. One certainly would not forward a "mere draft" or a document containing "serious errors" to be signed by DHL's customer and cargo supplier. (Windrim Decl. ¶¶ 7-11). Mr. Windrim goes on to debunk the rest of the misdirection put forth by DHL in its papers concerning various other communications. (Windrim Decl. ¶¶ 12-17).

Regardless of whether the London arbitrators determine that DHL was acting as an agent for Bateman, and regardless of whether DHL ultimately succeeds on the merits, that does not change the fact that Phoenix has shown that it has alleged a *prima facie* maritime claim against DHL.

A contract for carriage of cargo aboard a vessel is a quintessential maritime contract. The breach of a maritime contract is a maritime claim well within the Court's admiralty jurisdiction. Phoenix's pleadings allege a claim against DHL for breach of a contract of carriage which, by definition, is a valid *prima facie* maritime claim. At this stage of the proceedings, the Court need not go any further into the merits of the underlying dispute, nor should it. DHL's challenge to the existence of a contract with Phoenix (which is factually and legally implausible) go to the merits of Phoenix's claim and involve matters of English contract law. Such matters should be preserved for the arbitrators in London to evaluate. *E.g.*, Ronda, 551 F.Supp.2d at 404 (defendant's contention that it never executed the charter party that it allegedly breached, so no enforceable contract existed between plaintiff and defendant, challenged the substance of plaintiff's claim, which arguments involved the ultimate merits of the claim, and were more properly the subject of the pending litigation in London); T & O Shipping, Ltd. v. Lydia Mar Shipping Co., 415 F.Supp.2d 310, 316 (S.D.N.Y. 2006) (refusing to interpret charter party because it was a "substantive legal question which will be decided under English law in the arbitration and…not a question that this Court should or will resolve"); Glory, 2008 U.S. Dist. LEXIS 60967 at *11 (finding that complaint asserted a maritime claim for repudiation of a charter party, a maritime contract, and thus declining to consider "questions of contract law that are for the London arbitrators to decide, not for this Court").

## POINT III

### DHL AGREED TO ARBITRATE THE CLAIM MADE BY PHOENIX AND THAT ARBITRATION HAS BEEN COMMENCED

DHL falsely asserts that it did not agree to arbitrate with Phoenix and that arbitration has not been commenced.

That DHL and its South African lawyer have denied that there was an agreement to arbitrate either in London or South Africa is of no moment. As explained by Mr. Mays, the London solicitor for Phoenix, such a contention will be seen as a challenge to the jurisdiction of the arbitrator. That a party disputes the tribunal's jurisdiction does not, however, prevent arbitration proceedings being commenced against them. As a matter of English law an arbitrator has the power to rule upon the existence or otherwise of the contract and agreement to arbitrate. Thus, this Court should decline to entertain DHL's contention that it is not obliged to arbitrate with Phoenix as this determination is wholly within the province of the arbitrator's powers and will be determined by him/her should DHL not agree to submit the merits of the underlying dispute to arbitration. (Mays Decl. PP 13-14).

DHL's argument that Phoenix has not commenced arbitration, this is also patently false. As set forth in the Mays Declaration, in May 2008 there were a number of exchanges between South African lawyers representing Phoenix and DHL in response to Phoenix's suggestion that, notwithstanding the English Law and London arbitration clause in the governing charter recap, the parties arbitrate the dispute in South Africa as a costs saving measure since both Phoenix and DHL are present there. DHL ultimately rejected this proposal.

As the charter recap states neither the number of arbitrators to be appointed nor the procedure in appointing them, under English law a sole arbitrator is to be seated. Accordingly, on June 26, 2008, Phoenix's solicitor sent a telefax to the South African attorneys for DHL requesting DHL agree to the joint appointment of one of three named arbitrators to serve as sole arbitrator in an arbitration involving the deadfreight dispute to be held in London as per the terms of the charter. Phoenix advised that unless DHL agreed to the appointment of one of the proposed arbitrators within 28 days it would apply to the English High Court to appoint an

arbitrator. DHL's South African lawyer acknowledged this correspondence and also advised that, notwithstanding DHL's position that a London arbitrator does not have jurisdiction to entertain the dispute, DHL had requested he instruct London solicitors. In view of this DHL requested Phoenix take no further action until August 8. While that date has passed, Phoenix has not yet made an application to the English High Court, Phoenix has reserved the right to make the application should DHL not agree an arbitrator.

That Phoenix has not taken the formalistic step of applying to the High Court to have an arbitrator appointed does not mean that arbitration has not been commenced. Under the applicable English law the arbitration was commenced by the sending of the June 26, 2008 telefax to DHL's attorney seeking agreement on the appointment of a sole arbitrator. There is no requirement as a matter of English Law that DHL's attorneys agree Phoenix has commenced arbitration to make it so. (Mays Decl. 13-23).

Accordingly, notwithstanding DHL's "belief" to the contrary, arbitration has indeed been commenced by Phoenix against DHL.

## POINT IV

### PHOENIX'S VERIFIED COMPLAINT WAS PROPERLY "VERIFIED"

DHL claims that the verification of Phoenix's Verified Complaint was somehow deficient. DHL appears to mistake what it means under the Federal Rules to verify a pleading.

A plaintiff proceeding under Rule B must verify its complaint. The Admiralty Rules do not set forth the correct form for a verification and therefore, courts look to the law of the forum state to determine what constitutes proper verification. United States v. $84,740.00 Currency, 900 F.2d 1402, 1404 (9th Cir. 1990) (citations omitted).

The New York State law on attorney verifications of the pleadings is set forth in CPLR 3020(d)(3), which provides that "if the party is a foreign corporation, or is not in the country where the attorney has his office...the verification may be made by such...attorney." An attorney who lacks personal knowledge, and has to verify on second-hand information, may do so provided the party satisfies the requirements of CPLR 3020(d)(3). The form of the verification is governed by CPLR 3021 and the form for an attorney verification is illustrated by Official Form 21, which states:

> J.K., being duly sworn, states that he is the attorney for plaintiff in this action and that the foregoing complaint is true to his own knowledge, except as to matters therein stated on information and belief and as to those matters he believes to be true; that the grounds of his belief as to all matters not stated upon his knowledge are correspondence and other writings furnished to him by plaintiff and interviews with officers and employees of plaintiff; and that the reason why the verification is not made by plaintiff is that [e.g., plaintiff is a foreign corporation].

Phoenix is a foreign corporation and is in a country where the undersigned counsel does not have an office. As such, the undersigned was allowed to and did verify the complaint in accordance with CPLR 3020(d)(3).

## CONCLUSION

For all the foregoing reasons, Defendant's motion to vacate the attachment should be denied.

Dated: New York, New York
      August 20, 2008

                         FREEHILL HOGAN & MAHAR, LLP
                         Attorneys for Plaintiff
                         Phoenix Shipping Corporation

By: _____
                         Michael E. Unger (MU 0045)
                         80 Pine Street
                         New York, NY 10005
                         (212) 425-1900 / (212) 425-1901 fax